### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW MEXICO

FRANK BLAZQUEZ,

   Plaintiff,

  vs.           No. 1:19-CV-00890-KRS

ANDREW SAUL, Commissioner of
Social Security,

   Defendant.

### MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court upon Plaintiff's Motion to Reverse and/or Remand

(Doc. 22), dated May 19, 2020, challenging the determination of the Commissioner of the Social

Security Administration ("SSA") that Plaintiff is not entitled to disability insurance benefits

under Title II of the Social Security Act, 42 U.S.C. §§ 401-34. The Commissioner responded to

Plaintiff's motion on July 27, 2020 (Doc. 26), and Plaintiff filed a reply brief on October 6, 2020

(Doc. 30). With the consent of the parties to conduct dispositive proceedings in this matter, *see*

28 U.S.C. § 636(c); FED. R. CIV. P. 73(b), the Court has considered the parties' filings and has

thoroughly reviewed the administrative record. Having done so, the Court concludes that the

administrative law judge ("ALJ") erred in his decision and will therefore GRANT Plaintiff's

motion and remand this case back to the SSA for proceedings consistent with this opinion.

### I. PROCEDURAL POSTURE

On April 26, 2016, Plaintiff filed an initial application for disability insurance benefits.

(*See* Administrative Record ("AR") at 61). Plaintiff alleged that he had become disabled on

January 29, 2016, due to hypothyroidism, adrenocortical insufficiency, diabetes insipidus,

hypopituitarism, and testicular hypofunction. (*Id.* at 63). His application was denied at the initial

level on October 14, 2016 (*id.* at 61-76), and at the reconsideration level on February 8, 2017 (*id.* at 77-93). Plaintiff requested a hearing (*id.* at 101), which ALJ Frederick E. Upshall, Jr. conducted on February 12, 2018 (see *id.* at 32-60). Plaintiff was represented by counsel and testified at the hearing (*id.* at 32, 37-52), as did a vocational expert (*id.* at 52-58).

On December 3, 2018, the ALJ issued his decision, finding that Plaintiff was not disabled under the relevant sections of the Social Security Act. (*Id.* at 18-26). Plaintiff requested that the Appeals Council review the ALJ's decision (*id.* at 163-64), and on September 11, 2019, the Appeals Council denied the request for review (*id.* at 1-3), which made the ALJ's decision the final decision of the Commissioner. On September 25, 2019, Plaintiff filed the complaint in this case seeking review of the Commissioner's decision. (Doc. 1).

## II.  LEGAL STANDARDS

### A.  Standard of Review

Judicial review of the Commissioner's decision is limited to determining "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016); *see also* 42 U.S.C. § 405(g). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *See, e.g.*, *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Although a court must meticulously review the entire record, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *See, e.g.*, *id.* (quotation omitted).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted); *Langley*, 373 F.3d at 1118 (quotation omitted). Although this threshold is "not high,"

evidence is not substantial if it is "a mere scintilla," *Biestek*, 139 S. Ct. at 1154 (quotation omitted); "if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118; or if it "constitutes mere conclusion," *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005) (quotation omitted). Thus, the Court must examine the record as a whole, "including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan*, 399 F.3d at 1262. While an ALJ need not discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence," and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). "Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quotation omitted).

## B. Disability Framework

"Disability," as defined by the Social Security Act, is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *Wall v. Astrue*, 561 F.3d 1048, 1051-52 (10th Cir. 2009); 20 C.F.R. §§ 404.1520, 416.920. If a finding of disability or non-disability is directed at any point, the SSA will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24. At the first three steps, the Commissioner considers the claimant's current work activity and the severity of his impairment or combination of impairments. *See id.* at 24-25. If no finding is directed after the

third step, the Commissioner must determine the claimant's residual functional capacity

("RFC"), or the most that he is able to do despite his limitations. *See* 20 C.F.R. §§ 404.1520(e),

404.1545(a)(1), 416.920(e), 416.945(a)(1). At step four, the claimant must prove that, based on

his RFC, he is unable to perform the work he has done in the past. *See Thomas*, 540 U.S. at 25.

At the final step, the burden shifts to the Commissioner to determine whether, considering the

claimant's vocational factors, he is capable of performing other jobs existing in significant

numbers in the national economy. *See id.*; *see also Williams v. Bowen*, 844 F.2d 748, 750-51

(10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

### III.   THE ALJ'S DETERMINATION

The ALJ reviewed Plaintiff's claim pursuant to the five-step sequential evaluation

process. (AR at 19-20). He first determined that Plaintiff had not engaged in substantial gainful

activity since his onset date. (*See id.* at 20). The ALJ then found that Plaintiff suffered from

severe impairments in the form of degenerative disc disease and a history of craniopharyngioma

status post pituitary transsphenoidal surgery and radiation treatment. (*See id.*). The ALJ also

found that Plaintiff suffered from depression that did not amount to a severe impairment. (*See id.*

at 20-21). At step three, the ALJ concluded that Plaintiff did not have an impairment or

combination of impairments that met the criteria of listed impairments under Appendix 1 of the

SSA's regulations. (*See id.* at 22).

Proceeding to the next step, the ALJ reviewed the evidence of record, including

Plaintiff's own subjective symptom evidence. (*See id.* at 22-24). Based on his review of the

evidence, the ALJ concluded that Plaintiff possessed an RFC to perform "less than the full range

of medium work," with certain additional physical restrictions. (*See id.* at 22). Moving to step

five, the ALJ found that Plaintiff was unable to perform any past relevant work but could

perform other jobs existing in significant numbers in the national economy. (*See id.* at 24-26).

The ALJ therefore concluded that Plaintiff's work was not precluded by his RFC and that he was

not disabled. (*See id.* at 26).

## IV. DISCUSSION

In addition to other asserted grounds for remand, Plaintiff cites several purported errors in

the ALJ's evaluation of his subjective symptom evidence (*see* Doc. 22 at 21-23), while the

Commissioner counters that the evaluation was supported by substantial evidence. (*see* Doc. 26

at 9-11). Because the Court concludes that the ALJ did not follow proper legal standards in

assessing Plaintiff's subjective symptom evidence, and because the Commissioner contends that

some of the ALJ's other disputed findings relied in part on his conclusions regarding that

evidence (*see, e.g.*, Doc. 26 at 11) (arguing that ALJ "was not required to account for" Plaintiff's

statements to consultative examiner "[g]iven that [he] already found Plaintiff's subjective

complaints were less than reliable"), the Court does not reach Plaintiff's additional claims of

error. *See, e.g.*, *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

The assessment of subjective symptom evidence is a two-step process, requiring the ALJ

to first determine whether the claimant has a medically determinable impairment that could

reasonably be expected to produce his alleged symptoms. *See* Social Security Ruling (SSR) 16-

3p, 2016 WL 1119029, at *3 (Mar. 16, 2016).[1] If so, the ALJ must then evaluate the intensity

and persistence of the claimant's symptoms and determine the extent to which his symptoms

limit his ability to perform work-related activities. *See id.* at *4. In doing so, the ALJ must

"examine the entire case record, including the objective medical evidence; an individual's

---

[1] SSRs are binding on the SSA, and while they do not have the force of law, courts traditionally defer to SSRs since they constitute the agency's interpretation of its own regulations and foundational statutes. *See Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990); 20 C.F.R. § 402.35; *see also Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993) (SSRs entitled to deference).

statements about the intensity, persistence, and limiting effects of symptoms; statements and

other information provided by medical sources and other persons; and any other relevant

evidence in the individual's case record." *Id.*; *see also id.* at *4-7 (elaborating on factors to

consider); 20 C.F.R. § 404.1529(c) (same).

An ALJ's subjective symptom evaluations "warrant particular deference." *White v.

Barnhart*, 287 F.3d 903, 910 (10th Cir. 2002).[2] Still, such "deference is not an absolute rule." *See*

*Kellams v. Berryhill*, 696 F. App'x 909, 917 (10th Cir. 2017) (unpublished) (quoting *Thompson*

*v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993)). In evaluating a claimant's subjective

symptom evidence and other matters, an ALJ must discuss not only "the evidence supporting his

decision," but also "the uncontroverted evidence he chooses not to rely upon, as well as

significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir.

1996). Along these lines, "[i]t is improper for the ALJ to pick and choose among medical

reports, using portions of evidence favorable to his position while ignoring other evidence."

*Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (quotation omitted). Likewise, an

ALJ is not permitted to "mischaracterize or downplay evidence to support her findings." *Bryant*

*v. Comm'r, SSA*, 753 F. App'x 637, 641 (10th Cir. 2018) (unpublished) (citing *Talbot v. Heckler*,

814 F.2d 1456, 1463-64 (10th Cir. 1987)). Failure to follow these controlling legal standards is

grounds for remand. *See, e.g.*, *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984).

Here, Plaintiff contends that the ALJ erred in concluding that "the medical evidence

shows that [he] has been noncompliant in taking his medications as prescribed." (*See* AR at 23).

In reaching this conclusion, the ALJ cited to September 2017 treatment notes from a medical

---

[2] In 2016, SSA eliminated the use of the term "credibility" when describing a claimant's testimony to "clarify that subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2016 WL 1119029, at *1 (superseding SS 96-7p). As such, older authorities that addressed a claimant's "credibility," *see, e.g.*, *White*, 287 F.3d at 910, are construed as referring to an individual's subjective symptom evidence.

provider recording Plaintiff's report that he had suffered acute adrenal insufficiency a year

earlier when he did not utilize sick dosing of his Cortef (hydrocortisone) prescription. (*See id.*)

(citing *id.* at 500). However, the October 2016 Emergency Department medical records from

Presbyterian Hospital concerning that earlier incident recount Plaintiff's claim that he "ha[d]

been taking his stress dose [of] cortef" prior to the incident and had even doubled that dosage as

his symptoms progressed (*see* AR at 607), a statement that is inconsistent with the one recorded

in the September 2017 records (*see id.* at 500). By failing to address the inconsistency in these

records before relying solely on the evidence supporting a finding of medication noncompliance,

the ALJ committed legal error. *See, e.g.*, *Clifton*, 79 F.3d at 1010 (ALJ must consider

"significantly probative evidence he rejects"); SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996)

(ALJ "must also explain how any material inconsistencies or ambiguities in the evidence in the

case record were considered and resolved").

     Without acknowledging this inconsistency, the Commissioner nonetheless asserts that the

ALJ's finding was justified because the record evidences "at least two [other] episodes of

emergent care . . . where Plaintiff had failed to utilize sick dosing, which led to an exacerbation

of symptoms." (Doc. 26 at 10) (citing medical records from April 2016 and March 2017).

However, because the ALJ did not discuss any medication noncompliance in the context of

either medical episode—indeed, the ALJ did not address the treatment Plaintiff received during

the April 2016 incident at all—such post hoc rationalizations cannot support the ALJ's decision.

*See, e.g.*, *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007) ("[T]his court may not create

or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the

ALJ's decision itself."). Even if this were not the case, the Commissioner's argument

misconstrues the evidence: rather than showing that a failure to comply with a medication

regimen "led to an exacerbation of symptoms," the treatment notes from both April 2016 and

March 2017 describe Plaintiff's allegations that symptoms first arose *following other events*. (*See*

AR at 391-93) (noting April 2016 symptoms following "expos[ure] to sick contacts at the

workplace"); (*id*. at 595-99) (describing alleged symptoms "since [Plaintiff's] surgery").

Although Plaintiff did tell his providers that he was not taking his prescribed medication during

his March 2017 visit, he stated that this noncompliance was a *result* of his symptoms, rather than

a cause. (*See id.* at 595, 599) (noting, *e.g.*, that Plaintiff "has not been able to take any of his

medication *due to the nausea and vomiting*") (emphasis added). And the treatment records from

April 2016 cited by the Commissioner do not describe any medication noncompliance

whatsoever, let alone any resulting exacerbation of symptoms. (*See id.* at 391-93).[3] Given this

record, the ALJ's failure to address conflicting evidence concerning Plaintiff's compliance with

his medication regimen, and the ALJ's failure to resolve this evidentiary conflict, constitutes

reversible error.

Plaintiff also takes issue with the ALJ's conclusion that his receipt of "little to no medical

treatment from November 2017 to February 12, 2018, the date of the [ALJ's] hearing," should

"[w]eigh[] against" his subjective symptom evidence. (*See id.* at 23). To be sure, a claimant's

failure to seek medical treatment for his purported conditions is a valid factor for an ALJ to

consider when assessing subjective symptom evidence. *See, e.g.*, SSR 16-3p, 2016 WL 1119029,

at *7 (noting that a claimant's treatment history should be considered when evaluating effects of

symptoms); *cf., e.g.*, *Sawyer v. Barnhart*, 89 F. App'x 148, 152 (10th Cir. 2004) (unpublished)

(affirming ALJ's conclusions regarding severity of claimant's depression based on *inter alia*,

---

[3] The records in question state that Plaintiff's providers started him on "stress dose steroids with Hydrocortisone 100 mg TID" upon hospital admission. (*See id.* at 392). However, the Commissioner points to nothing in these records indicating that Plaintiff's medication regimen required him to be taking the directed dose *before* his hospitalization, let alone that any failure to do so caused or exacerbated any symptoms. (*See id.* at 392, 587).

"her lack of treatment with a mental health professional"). In this case, however, the ALJ's conclusion improperly mischaracterizes the record. As Plaintiff points out (*see* Doc. 22 at 22), and as the ALJ failed to acknowledge, Plaintiff in fact attended multiple imaging appointments with his Department of Veterans Affairs ("VA") providers during the period in question (*see* AR at 490, 533-39, 559, 567-68) (listing appointments, vital signs taken, and lab tests performed on November 1 and November 21, 2017), and he filled or refilled multiple prescriptions during that time (*see id.* at 494-95). Moreover, even though the VA had only become his primary care provider beginning in late July 2017, Plaintiff had already attended at least three VA appointments in the four-month period between that date and before November 1, 2017. (*See id.* at 490). And importantly, at the time of the ALJ's hearing, the record before the ALJ revealed that Plaintiff was scheduled for yet another appointment on March 16, 2018, just one month after that hearing date. (*See id.*). All of this is important context that undermines the ALJ's reasoning, and the ALJ's failure to address these facts or construe the alleged treatment gap in light of those facts amounted to legal error. *See Bryant*, 753 F. App'x at 641 (ALJ may not "mischaracterize or downplay evidence to support her findings"); *cf. Carpenter*, 537 F.3d at 1265 (ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence").[4]

---

[4] In light of these facts and the broader context of Plaintiff's treatment, the ALJ's conclusions concerning the implications of his purported treatment gap were also unsupported by substantial evidence. Although an ALJ may properly consider a claimant's lack of treatment in assessing his subjective symptom evidence, the Tenth Circuit has observed in unpublished caselaw that "the lack of treatment for an impairment does not necessarily mean that the impairment does not exist or impose functional limitations." *Cf. Grotendorst v. Astrue*, 370 F. App'x 879, 883 (10th Cir. 2010) (unpublished) (reversing step-two determination that claimant's mental impairments were not severe based on alleged lack of mental health treatment). This would especially seem to be the case here, where the ALJ relied on a mere *three-month period* out of at least *six years* of medical treatment records (*see* AR at 282-622)—a period that also included Thanksgiving and the winter holidays, and a period during which Plaintiff continued to obtain lab tests and attend other medical appointments—to conclude that Plaintiff's conditions might not be "as bothersome as he has attempted to portray" (*id.* at 23). On this record, under the aforementioned circumstances, Plaintiff's alleged receipt of "little to no medical treatment" over a three-month period (*id.*) amounts to nothing more than "a mere scintilla" of evidence concerning the effects of Plaintiff's symptoms. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (describing substantial-evidence standard).

Although the Commissioner's response brief may be read to suggest that these legal errors were harmless (*see* Doc. 26 at 9) (stating in heading that RFC finding was "free from harmful legal error"),[5] the ALJ relied in significant part on the aforementioned unresolved inconsistencies and mischaracterized evidence when discounting Plaintiff's subjective symptom evidence (*see* AR at 23) (describing these matters as "[w]eighing against the claimant"). For this reason, the Court cannot say that "no reasonable factfinder, following the correct analysis, could have resolved the factual matter in any other way" had the ALJ followed the correct legal standards. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). Accordingly, the Court concludes that Plaintiff's motion is due to be granted and that remand is required so that the ALJ may properly evaluate Plaintiff's subjective symptom evidence in compliance with governing legal principles.

## V.  CONCLUSION

The ALJ erred in his review of Plaintiff's application for disability insurance benefits by failing to assess Plaintiff's subjective symptom evidence consistent with controlling legal standards. Accordingly, Plaintiff's Motion to Reverse and/or Remand (Doc. 22) is **GRANTED**, and the Court remands this case back to the SSA for proceedings consistent with this opinion.

_____
**KEVIN R. SWEAZEA**
**UNITED STATES MAGISTRATE JUDGE**

---

[5] *But see, e.g.*, *Sierra Club, Inc. v. Bostick*, 787 F.3d 1043, 1060 n.18 (10th Cir. 2015) (citation omitted) (deeming argument waived where appellants "ha[d] not developed this argument beyond the heading"); *United States v. Rivera*, 554 F. App'x 735, 739 (10th Cir. 2014) (unpublished) (citing *United States v. Cooper*, 654 F.3d 1104, 1128 (10th Cir. 2011)) (noting that mere reference to argument in a brief heading, "without further argument in support, is insufficient to raise the argument").